

EXHIBITS "A" and "E" ARE FILED UNDER SEAL



The Honorable Christopher F. Droney
United States District Judge
United States District Court
Federal Building and U.S. Courthouse
450 Main Street
Hartford, CT  06103

        This letter is in regards to the upcoming sentencing hearing for Edmund Funaro, Jr.  I am a Connecticut native and a 49 year resident of Cheshire.  My husband and I have used the Visels Pharmacy for many years because we know them to be a fair and reputable establishment.

        I have heard about Mr. Funaro's court case and I and many of the residents of the Cheshire community are very upset by the possible incarceration of a very decent and upstanding citizen.

        I have known Ed's parents for 40 years.  They are both wonderful people who have raised 5 terrific children.  They have passed on their upstanding morals and beliefs to them all.  They have been very active in their community and their children are carrying on that tradition as well.

        Ed Jr. and his wife Lisa have been married for about 20 years and they have three wonderful children: Michael, age 17, Danielle, 16 and Jason, age 11.  Ed Jr. has been a very active parent.  He is involved in the Boy Scouting program in Killingworth doing fundraising for the organization as well as involvement in camping and any other way that the organization may need him.  He has coached baseball, basketball and soccer.  His son Mike was captain of the golf team last year and in the National Honor Society.  His daughter Danielle is involved in cross country and track and is the captain of the track team this year.  She is also an excellent student.  The youngest child, Jason in involved in activities through the local park and recreation department and Ed, Jr. has helped out with those activities as well

        Ed, Jr. himself was very involved in the Boy Scouts of America while growing up and went as high as a Life Scout.  He was and is a wonderful son and Father and an asset to the community.

        I know that I speak for many of the people in Cheshire when I respectfully ask that the court show leniency in the sentencing of Edmund Funaro, Jr.  Putting this man behind bars will most definitely put a strain on his immediate family, especially his three

children.  Losing a father at any time is difficult, but for teenagers going through their most difficult years, it would be especially hard.  It would also put a strain on Ed's parents as they run the family business along with Ed, Jr.  They are in their 60's and Ed's loss as a partner as well as son would be devastating!

I respectfully request your consideration for leniency in the sentencing of Edmund Funaro, Jr.

Sincerely,

Mrs. Barbara Brandolini
30 Arrowleaf Ct.
Cheshire, CT  06410

Karen Hekeler
544 Oak Avenue
Cheshire, CT  06410
203-271-2438

January 14, 2004

The Honorable Christopher F. Droney
United States District Judge
United States District Court
Federal Building and U.S. Courthouse
450 Main Street
Hartford, CT  06103

Dear Judge Droney:

Please accept this letter as a reference for Mr. Edmund Funaro, Jr.

I am proud to present this letter to you today, as I have known Ed on a personal as well as professional level for over 20 years. Ed is a devout family man from a highly respected family in my community. He has spent many years as a volunteer coach for various sports teams that his children were involved with and while his business required many hours of his time, his family was always first and foremost.

Ed joined his family's business over twenty years ago when opportunities for more lucrative pharmacist situations were certainly available. That was about the time as a wholesaler representative, that I began to call on Visel's pharmacy. Ed was dedicated to the kind of pharmacy that his Dad practiced for over 40 years – caring and service. I was selling the "Good Neighbor" pharmacy program at that time, of which Ed immediately joined. He liked the concept and actually as I think about it, it is the way the store was operated. Open and servicing their customers when the weather, holidays or weekends would close everything else, just like a good neighbor.

When the neighborhood that they service began to deteriorate, and robberies and break-ins were a daily event for other merchants in the area, the family could have chosen to move their business to a safer location. Ed would not even consider it. He believed that after 40 years, the store was part of the community it served. That's it's people came to depend on them and the services they provided. I had on many occasions while making a sales call to the store, the opportunity to observe the patient care that Ed delivered to his customers; always explaining to the customer how to take their medication, many times coming out from behind the counter to discuss their medical condition, and of course consulting on a first name basis. Not that long ago, Ed decided that due to the prevalence of asthma in his customer population, he decided to get some additional training in the disease and has become Certified in Asthma Care. Helping patients understand their disease and how best to manage it, is his goal.

Ed is the epitome of a good pharmacist. He often goes above and beyond to serve his customers; to be sure they were able to receive the medicine they needed; whether that means extra phone calls to an insurance company or a physician or even allowing a patient to charge to a house account if they did not have the money to pay for their medicine.

I look forward to Ed continuing in the practice of pharmacy for many years to come as there are not many pharmacists as dedicated to his profession as he is in the marketplace today.

Sincerely yours,

Karen Hekeler

338 Towpath Lane
Cheshire, CT. 06410
February 17, 2004

The Honorable Christopher F. Droney
United States District Judge
United States District Court
Federal Building and U.S. Courthouse
450 Main Street
Hartford, Connecticut  06103

Your Honor:

We are writing to request that the Court apply leniency with respect to the sentencing phase of the trial of Ed Funaro and furthermore that you give serious consideration to reversing the verdict. We believe that the circumstances in this case warrant such a result. Accordingly, we offer the following for your consideration.

**His Belief in His Innocence** – Initially, we believe that it is relevant to consider why this case was tried in the first place. We believe that from Mr. Funaro's standpoint it was totally contrary to his high moral values and integrity for him to agree to any level of a crime which he is convinced he did not commit. We believe that this is a classic case of a person who firmly believes in his innocence, being unwilling to sacrifice his moral convictions and take the easy way out by agreeing to a lesser charge. Thus, he chose the higher standard of believing in his innocence and there-by exposing himself to the risk of a trial rather than succumb to the temptation to sacrifice his integrity. It was just too hard for him, an innocent person, to sacrifice his principles. In our view, the Court should not penalize Mr. Funaro for believing in his innocence and not compromising his principles.

**Lack of a Motive** – What is perplexing to us is "Why"? Beyond the fact that Mr. Funaro is an upstanding person with integrity, it also does not make any sense for him to have knowingly committed the alleged criminal offense. Where is the motive for committing the violation? It certainly was not financial; nor was it for some personal reason. The State has identified 27 prescriptions over two years. Yet, if we were to estimate the potential profit associated with filling 27 prescriptions early, it surely amounts to an insignificant amount. It makes absolutely no sense that he would have subjected himself, his family, the business, the community, to a criminal risk, with so little to gain.

This is not a situation where he did not have a livelihood and was seeking to enrich himself. Mr. Funaro had financial security from the business which he had participated in building over many years. We are at a loss to explain why an upstanding person with

1

integrity would knowingly participate in the alleged violation(s) without any motive. We believe that this is a significant factor for the Court to consider and goes to support his lack of any criminal intent. We believe that at worst the filling of the 27 prescriptions were oversights but clearly do not rise to the level of a criminal act. The motive for him to commit any criminal act is just not there!

**Few Discrepancies Relative to Total Prescriptions Processed –** We believe that it is significant that the 27 prescriptions over a two year period represent an extremely small number when compared to the total prescriptions filled by Mr. Funaro. They represent only a fraction of the prescriptions written by Dr. Massey and an even smaller fraction when compared to all prescriptions filled by Mr. Funaro over the two years, which surely amount to tens of thousands. Putting this in perspective, on average it represents approximately two per month as compared to thousands of prescriptions filled by Mr. Funaro each month. In our opinion, such a limited number does not support a conclusion that there was sufficient frequency to exhibit a willful intention to commit a criminal act rather than being oversights.

It is common knowledge that there are many errors made by health professionals in prescribing and dispensing prescription drugs, as evidenced by the recently enacted State reporting laws. Yet, common sense tells us that anyone engaged in processing thousands of items will have some error rate. So too we believe that the errors made by Mr. Funaro do not support a conclusion of a criminal act where there is no motive for such.

**Government Overzealous–** We believe that it is significant that the government failed to act promptly to prevent Dr. Massey from continuing his practice and that the government bears some responsibility for their failure to notify potential innocent victims of Dr. Massey's actions. In our view, the prolonged two year investigation of Dr. Massey, exposed Mr. Funaro to unwarranted risks. As a result, by merely carrying on his day-to-day business activities, any errors made by Mr. Funaro could be used to create an impression to the jury of guilt by association with Dr. Massey's practice. Thus, the limited number of errors or oversights he may have made each month, became magnified to the jury when linked by the government to the actions of Dr. Massey over two years.

By hoping to uncover a conspiracy and taking so long to shut down Dr. Massey, the government neglected the rights of Mr. Funaro by subjecting him to this risk of association. Who of us would want to be exposed to the risk of being charged with a criminal act merely because of an indirect association with a person whom the government knew was violating the law but allowed it to continue. By failing to notify interested parties of the revocation of Dr. Massey's license, the government exposed Mr. Funaro to the potential that by merely carrying out his normal daily professional activities, it might be judged to be a criminal act of conspiracy with an unscrupulous physician. Yet, how is a pharmacist to know on any given day, whether or not a

2

prescription might be written by a rogue physician.   For the government to presume that other interested parties should find out, ignores their responsibility to inform and assist the people it serves.

In fact, this guilt by association appears to be just what the government was seeking by virtue of the fact that their initial charges maintained that there was a conspiracy with Dr. Massey; one that was totally unfounded. Yet, the government did not care that it did not have the evidence for such charges. This apparent mindset of using a standard of guilt by association was aimed at getting the big bang impact from publicity in all the news media, even though it was untrue. In our view, this reflects the mindset of the government in this case, to ignore Mr. Funaro's rights merely to get the publicity of setting an example.   It is also exhibited by the tactic of providing discovery information at the last minute to the defense, in an attempt to prevent the defense from having time to prepare for trial.

**Jury Deliberations –** We believe that the fact that the jury took four days to reach its verdict reflects that the evidence presented was not strong and left the jury with significant doubts.   We believe that it is likely that the jury failed to appropriately distinguish between the actions of Dr. Massey and Mr. Funaro's oversights.  In fact, we fail to see why the conduct of any physician needs to be introduced as evidence at a trial where the acts of a pharmacist are being questioned; unless it is to create the guilt by association impression to the jury.

**Benefits to the Community –** The business which Mr. Fuanro has helped to build provides health care services to the poor urban Dixwell Avenue community and there-by serves many who are less fortunate. It is the only pharmacy business to serve the area in which it is located and serves many who do not have means of private transportation. Visel's has also provided employment opportunities for those in the poor New Haven community which it serves.

Mr. Funaro is an integral part of Visel's being able to provide significant benefits to the community. His devotion to the community has continued even though he has faced death threatening armed robbery risks in the past. Penalizing Mr. Funaro will have a direct impact on the ability of Visel's to continue to provide this assistance to the community. Visel's cannot continue without his presence as a licensed pharmacist. No other pharmacy serves those who are less fortunate and his aging father cannot sustain the business without the help of his son as a licensed pharmacist.   The destruction of Visel's as a business will have a significant impact on many others within the community.

**Destroy a Business Which took a Lifetime to Build -**  Any penalty which imposes a financial drain on the assets of Visel's, or any penalty which restricts Mr. Funaro from

functioning as a licensed pharmacist for an extended period, will destroy the Visel business.

**Hardship on Family – Children -**  Obviously any penalty will have considerable impact on his children.  All three children are outstanding.   Their oldest son is a member of the National Honor Society and expects to attend college next year.  Their daughter ranks near the top of her class.  The quality of the children is further evidence of the attention which Mr. Funaro has devoted to his family and the values which he has instilled in them.  Any penalties imposed by the Court would be devastating to his children, both emotionally and financially, and limit their future education as they approach their college years.

**Conclusion**

In our opinion, the above factors all support a conclusion that there is absolutely no way that Mr. Funaro would have had any motive to knowingly commit a criminal act. Instead, the 27 prescriptions over a two year period were at worst unintended professional oversights.  Accordingly, in our opinion, it would be inappropriate for him to suffer any criminal penalties under the circumstances of this case.  We appeal to the Court to overturn the jury verdict and not impose penalties.  His oversights were not criminal in nature and in our view, the facts should be referred to a professional ethics board for appropriate action.  Anything more severe will be an injustice to Mr. Funaro, his family and the community, and would be devastating to many for a lifetime.   Thank you for considering our plea.

Sincerely,

*Paul E. Sandor*
Paul E. Sandor

*Nora M. Sandor*
Nora M. Sandor

4

James J. Goggins
115 Charter Oak Drive
Cheshire, CT 06410

January 21, 2004

The Honorable Christopher F. Droney
United States District Judge
United States District Court
Federal Building and U.S. Courthouse
450 Main St.
Hartford, CT 06103

Dear Sir:

I write this letter in support of my brother-in law Edmund Funaro, Jr. whose sentencing is to be decided by you on February 9, 2004. I write this with the hope that your sentence to Ed is decided fairly and with justice in mind. Although I did not attend the trial, my discussions with other family members indicate that your actions in the courtroom were considered by them to be fair and impartial.

I am sure when judging cases it is less emotionally wrenching when cases are comprised of facts that are indisputable and guilt and motive is easily determined based on irrefutable evidence. I think you would agree that this case does not fit into that category. As I see it, this case boils down to one thing. What was Ed thinking when he made the decision to fill prescriptions for Dr. Massie's patients.

Does the prosecutor's theory in this case really make sense to you? Why would Ed Funaro as well as the other pharmacists jeopardize their careers for little to no benefit to themselves. The prosecutors argued that Ed should have known these prescriptions were not valid. I ask how? Have you ever visited Visel's Pharmacy? This isn't a store in the middle of suburbia where the pharmacist knows every patient by name. It is a fast-paced store in a lower socio-economic neighborhood with a great amount of walk in traffic that serves as a pharmacy as well as liquor and variety store. The clientele are people that are mostly minority and often could be considered transients. Evidence was introduced and not disputed that the pharmacy questioned certain prescriptions made out by Dr. Massie when they considered them to be suspicious. If you subscribe to the prosecutor's theory that the pharmacists knew Dr. Massie's prescription were illegitimate then why would they question any prescription he wrote? How could the pharmacy have known that these prescriptions were fake. There was no evidenced presented that the patients told anyone at the pharmacy that they were receiving illegitimate drugs. There was no evidence presented that the patients paid any kickback to the pharmacy for filling drugs. There was no evidence presented that showed Dr. Massie had told these pharmacists that these prescriptions were not legitimate. No one at the state or federal agencies alerted the pharmacy to the fact that Dr. Massie may be writing illegal prescriptions. So how should he have known? Of course hind sight is often 20-20 but Ed did not have the benefit of the statements that came out in this trial by the patients before he made his professional decision to fill the prescriptions. If the prescriptions were deemed legitimate and he failed to fill the prescription you would probably have the same people who prosecuted this case, asking why they weren't being filled. Was it because the doctor and many of the patients were minorities? Would his denial of service be deemed an act of discrimination?

Sometimes it seems that justice becomes secondary to winning for the government. Careers are made and lost based on conviction results. It appears to me that Ed became a victim of a system that needed someone to punish after a costly investigation. Their biggest fish, Dr. Massie had died. Massie was a person that

appears to be the key link to the whole case. Was he ever asked if the pharmacists were knowingly involved in his scheme? Of all the parties in the case, the patients, the doctor and the pharmacist, it is clear the pharmacists had the smallest, if any, level of guilt. Where was their benefit? This case has the patients who started the cycle who <u>knowingly</u> received prescription that may not have been medically necessary. You have a doctor who according to the patient's stories, <u>knowingly</u> wrote prescriptions that may not have been medically necessary. And you have pharmacists, who obviously were fooled by the patients, <u>never knowingly were aware</u> that these prescriptions may not have been medically necessary. Does it make sense to punish the least culpable individuals the most?

Ed is a hard working husband and father who along with his wife Lisa, has raised three of the most thoughtful children you will ever meet. Although he works over 60 hours a week , including nearly every Sunday, he finds time to volunteer to various organizations. Whether it be leading a Boy Scout Troop activity or coaching the kid's soccer, baseball or basketball team, Ed gets involved. He does it because he knows it is the right thing to do.

Ed in an individual who fights for what he thinks is right. He could have taken the same plea bargain that the other pharmacist received and in hindsight probably should have. What exactly was the final punishment for the other pharmacists? In a fair society wouldn't the sentence be similar if the crime was the same? I am sure his family has spent a considerable amount on legal fees that would have been greatly reduced if he had taken the plea bargain. But he felt in his heart that he did not do anything wrong and wanted the chance to clear his name. We tell our children to fight for what they think is right. Our judicial system will teach a different lesson if it turns out that Ed's sentence is greater than the other pharmacists.

The thought of Ed being sentenced to prison would obviously be a nightmare for the Funaro family. It was also seem nonsensical from society's viewpoint. The cost to incarcerate someone is very expensive. The benefit to society for Ed's incarceration is very little. People found guilty of a crime should be punished. I have no quarrel with that. But the punishment should be proportionate to the crime. I think it could be argued that Ed has already been severely punished. He has lost his pharmacy license and his family has spent a considerable amount of money attempting to defend this case. Emotionally, his family will never be the same. I think society would be better served if your sentence incorporated Ed's skills and knowledge in a community service endeavor.

Best Regards,

James Goggins

**Robert A. DiBiccaro**

**132 Dorset Lane**
**Madison, CT  06443**

**203.421.9332**

**raddms@comcast.net**

January 22, 2004

The Honorable Christopher F. Droney
United States. District Court Judge
United States District Court
Federal Building and U.S. Courthouse
Hartford, CT  06103

Dear Judge Droney:

I am writing this letter in support of Ed Funaro, Jr. in connection with his sentencing hearing.

I am an Administrative Law Judge in the Office of Hearings and Appeals of the Social Security Administration in New Haven.  Prior to assuming that position in 1997, I served as Deputy Regional Counsel and Regional Judicial Officer in the New England Office of the Environmental Protection Agency in Boston.  I also practiced corporate and real estate law, and served for four years as a prosecutor in the Navy Judge Advocate General's Corps.  I am a 1971 graduate of the University of Chicago Law School.

I first met Ed in 1997 when I moved with my family to Killingworth.  My son, who was then six years old, is the same age as Ed's youngest son.  Because they were in many sports, community and school activities together, I saw Ed on many occasions in my first year in Killingworth.  I found him to friendly and well-spoken.  He appeared to be a good father who participated in many of his children's activities.  This initial impression was confirmed many times over when I got to know him personally.

It was while coaching second grade soccer with Ed that I saw first-hand how dedicated he is to his children.  He was unable to serve as head coach because of his demanding work schedule and his involvement in other activities of his children.  I served as head coach, but relied heavily on Ed because of his superior soccer skills and experience.  He always came directly from work to our weekly soccer practice.  He was a very good teacher and showed much patience with the lesser skilled children.   At the games, he made good sportsmanship the highest priority, even in the wake of a disappointing call or a losing effort.  He set an excellent example for the boys in his interactions with the referees and other coaches.

Ed and I coached on different teams for three years in youth baseball.  As an opposing coach, he set the same high standard for his fellow coaches and players, and the same example of good sportsmanship, as he did in soccer.  It was a pleasure to be in games with Ed and his team.

page 2

I got to know Ed more personally through the Cub Scouts where he was a den leader of my son's den. We were together on several overnight outings where we talked for many hours about our families, our backgrounds, our professional lives, and our community.

It was during these outings that I learned more about Ed's character and integrity. From our conversations, it was very clear that his children and family were his highest priority. He did not simply talk about what his family meant to him, however. He demonstrated it in numerous ways--through his direct participation in his children's activities (Cub Scout and Boy Scout leader, and baseball, soccer and basketball coach), and by his attendance at his children's school functions, including track meets, golf tournaments, and music events.

During these outings, I also learned how much the family business, Visel's Pharmacy, meant to Ed. He spoke of the business and his father in respectful and almost reverent terms. He talked about how his father built the business over many years and chose to remain in the original location despite the significant socio-economic changes that had occurred in the area. He spoke of how it was unlikely that another pharmacy would have come in to serve the neighborhood if his father had moved the business. He told me how he chose to work in the business after pharmacy school, even though he had other professional opportunities. He said that when his children were old enough he had them help out at the business on weekends, just as he had when he was boy. It was clear that he was proud of what he had contributed to the business and to his family's legacy.

With my own commitment to public service, it was gratifying to see a dedicated young professional providing a public service, in his own way, in the private sector. And it was clear how much it meant to Ed that Visel's Pharmacy continue to provide that service to the neighborhood residents. His pride in his family, and in the business it had created and sustained over two generations, was unmistakable. I remember remarking to Ed when he first told me about the business how much I respected his dedication and his values.

In sum, I have known Ed Funaro, Jr. for seven years and I can state without hesitation or qualification that he is a man of high moral character and personal integrity. I know him to be a good husband and father, an honorable man, and a genuinely good person.

Sincerely,

Robert A. DiBiccaro

103

January 22, 2004

Mrs Sandra L. Miller
P.O. Box 1342
Norwood, N.C. 28128


Honorable Christoher Droney
U.S. District Judge
U.S. District Court
Federal Building and U.S. Court House
450 Main St.
Hartford, Ct. 06103


Honorable Judge Droney:
I'm writing this in the defense of Edmund
Funaro Jr. My name is Sandra L. Miller.
I worked for Wisel Pharmacy from 1987 to
1995 leaving to get married and moved
to North Carolina. After working for someone
for 17 years you get to know something about
the people for whom you are working and
everything was always on the up and up.
When I heard about what happened to Ed Jr.
I knew without a doubt that it was not
true. There is no way Ed Jr. would fill
an invaild prescription. The only thing Ed Jr.
is guilty of is being a good husband, father
and a hardworking young man.

Since graduating from college he has worked very hard and would not sacrifice all his hard work by filling an invalid prescription. He helped his father expand and update the family business. He spent many long hours doing so and all the while dealing with his own illness. There is a grave injustice being done to this fine young man and he does not deserve what is happening to him and his family. He is the type of person you would want to live in your neighborhood or working in your community. An excellent roll model for any man, woman or child. There had to be some underlying circumstances for him to fill an invalid prescription. I hope in some way this letter will help Ed and I pray someone will come forward in his defense and see that he is a honest, decent and respectable person and is not guilty of these charges. It is a shame that Ed Jr. is being mistaken and treated like a common drug dealer. Maybe better communication between government and pharmacies is needed. Unfortunately the physician in question is deceased.

Ed defended himself in a court of law and a judicial system that he believed in. Unfortunately

3 of 3

he did not have a jury of his peers be-
cause they would have understood the
circumstances and found him _not guilty_.
God bless us all when we can sacrifice
a decent young man like Ed Jr. just
to bring to justice the wrong doings
of others. Something is wrong with this
whole picture.


Sincerely

Sandra L. Miller

THE HONORABLE CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE
UNITED STATES DISTRICT COURT
FEDERAL BUILDING AND U.S. COURTHOUSE
450 MAIN ST
HARTFORD, CT 06103

FREDERICK & EUNICE B. MAYO
315 EASTERN ST APT D 1413
NEW HAVEN CT 06513
203-467-1644

MY WIFE EUNICE AND I HAVE KNOWN MR. ED FUNARO JR. SINCE THE EARLY 70'S WHEN HE BEGAN WORKING FOR HIS FATHER ED SR.

Since THAT PERIOD THE DEMOGRAPHICS HAVE GREATLY CHANGED IN THAT AREA. ED. JR. HAS ADJUSTED SUCESSFULY TO THIS CHANGE.

HE HAS CONTRIBUTED FINANCIALY TO THE SEVERAL ORGANIZATIONS PERPETUATING THE ADVANCEMENT FOR THE AREA.

WE BOTH HAVE THE UTMOST RESPECT FOR THE ENTIRE FUNARO FAMILY.

HIS CHILDREN OCCASIONALLY ASSIST ED WITH THE CHORES IN THE STORE.

IN CONCLUSION ED FUNARO IS A FINE FATHER, SON, BUSINESS MAN, A NEEDED ASSET TO THE AREA & SOCIAL INVOLVEMENT.

HE HAS ALWAYS JUDGED WITH CANDOR, ADMONISHED WITH FRIENDSHIP, REPRIMANDED WITH JUSTICE.

I KNOW THESE QUALITIES WILL HAVE YOU DECIDE HIS FATE.

THANK YOU.

Fred P Mayo
Eunice B Mayo.

December 15, 2003


The Honorable Christopher F. Droney
United States District Judge
United States District Court
Federal Building and U.S. Courthouse
450 Main St.
Hartford, Ct. 06103


Dear Sir;

My name is Louis Imperato,Jr. and I have known Edward Funaro,Jr. and his family for 23 years. I am a salesman for Montano-Coclin Candy and Tobacco. I first started going into Visel Pharmacy 23 years ago as he was one of my first customer's when I joined the company. I first met Ed,Jr. working in the front of the pharmacy because he was not yet a pharmacist. It did not take me long to find out what kind of family they were. As the weeks, months, and years went by I became more than business associates with Ed and Ed,Jr., they became friends. Ed,Jr. was following in his father's footsteps as a very honest and loyal person and businessman. He stayed with our company, even as out of state vendor's were fighting the competion for business offers at cheaper prices. In most recent years I have dealt mostly with Ed,Jr. He is an excellent family man who does an excellent job raising and caring for his family. He is always involved with them,taking them to sporting events or coaching their teams. We talk about our families a lot and he has helped me with some untimely deaths in my family. He is a caring person with utmost integrity. I have spent an hour in his store each and every week for the last 23 years and I have never seen him do anything even remotely inappropiate.

I know that most people cannot believe that he was convicted, especially myself, I know that Ed would never knowingly disobey the law. I hope and pray that you will do everything in your power to be as lenient as you possibly can. I have the utmost respect and esteem for him and his entire family.


Very truly yours,

Louis J. Imperato,Jr.



# State of Connecticut

## HOUSE OF REPRESENTATIVES

### STATE CAPITOL
### HARTFORD, CONNECTICUT 06106-1591

**REPRESENTATIVE WILLIAM R. DYSON**
NINETY-FOURTH DISTRICT

P.O. BOX 2064
NEW HAVEN, CONNECTICUT 06521
TELEPHONES
HARTFORD: (860) 240-0390
TOLL FREE: 1-800-842-8267

CHAIRMAN
APPROPRIATIONS COMMITTEE

MEMBER
EDUCATION COMMITTEE
LEGISLATIVE MANAGEMENT COMMITTEE

February 5, 2004

The Honorable Christopher F. Droney
United States District Judge
United States District Court
Federal Building and U.S. Courthouse
450 Main Street
Hartford, CT  06103

Dear Judge Droney:

    I write this letter to serve as a character reference for Edmund Funaro Jr. of Killingworth, CT.  I have recently learned that Mr. Funaro has been indicted, along with other pharmacists and a physician, for illegally distributing controlled substances. Although I find it very hard to believe that Mr. Funaro is indeed guilty of this crime, I am aware that a jury has convicted him, and that my comments are to be aimed primarily towards a potential mitigation of sentence, and not a contesting of the charges.  It is with this in mind that I proceed with the following statements.

    Edmund Funaro Jr.'s family has owned and operated Visel's Pharmacy on Dixwell Avenue in New Haven since the 1960's.  As the State Representative of that district since the late 1970's, over the years I have come to know the Pharmacy and it's owners very well.  In my experiences with them, the Funaros have always conducted themselves in a truly professional manner.  As business owners within a lower socio-economic community, it is evident they feel a moral responsibility to provide in ways that reflect their awareness of this status.  Put simply, if a customer has needs, the Funaros' first and foremost concern is the taking care of these needs.  Financial concerns are always on the minds of business owners, but by all appearances the Funaros seem as intent on furthering their customer's benefit, as they do with their own.  It is this mindset and the many resulting actions that indeed make Visel's a valuable member of our community.

As Appropriations Committee Chair in Connecticut, I am well aware of the ever-increasing financial strain placed on independently owned pharmacies in recent years. That Visel's is able to exist, no less provide the same quality of customer service since its inception, is indeed quite remarkable. It distresses me to think of our community without Visel's Pharmacy. If Edmund Funaro is mandated to a prison sentence, I fear that this absence will inevitably occur. If that happens, it will not only be Edmund Funaro, Jr. that suffers, it will be his pharmacy, his family, and our community as well.

I ask you to keep my statements in mind as you issue a sentence to Mr. Funaro. I would be happy to speak further about this situation, should you feel the need. Thank you for your time and consideration.

Sincerely,

William R. Dyson
State Representative
94th District

December 28, 2003

To:       The Honorable Christopher F. Droney
            United States District Judge
            United States District Court
            Federal Building and U. S. Courthouse
            450 Main Street, Hartford CT 06103

From:     Rev. Scott D. Marks, Director
            Connecticut Center for a New Economy
            425 College Street, New Haven CT 06513

**Re:  *Ed J. Funaro, Jr.***

Dear Judge Droney:

Despite the pending allegations against Visels Pharmacy and its owners they have both been a tower of strength in the Dixwell/Newhallville Community.  They have serviced a community that many have unfortunately turned their backs on and may have not otherwise found fit to bring a necessary service to.  Over the past years the owners of Visels Pharmacy have committed their time and resources to various community and citywide initiatives.

I have been afforded the opportunity to know Mr. Ed Funaro for more then 15 years.  During this time Mr. Funaro has been very active in the community and citywide.  Mr. Funaro has been very helpful in working on activities that educate residents on the direr need for community involvement and educating many youth that reside in the community about the importance of completing high school.  He has shown himself to be committed, reliable and worthy of any consideration that you have the ability to provide to him, so that he may be able to continue servicing the community and provide for his family.

Again I write to you on behalf of Mr. Ed Funaro and ask that you find it fit to bestow forgiveness upon him.  If you have any further questions please contact me at (203) 785-9494 ext. 264.

Sincerely,

Rev. Scott Marks



**Finer, Chassé & Marcarelli, LLC**
CERTIFIED PUBLIC ACCOUNTANTS

Daniel W. Chassé
Stephen A. Marcarelli

Samuel M. Finer
1933–1986

The Honorable Christopher F. Droney                    December 4, 2003
United States District Judge
United States District Court
Federal Building and U.S. Courthouse
450 Main Street
Hartford, CT 06103

RE: Edmund Funaro Jr.

Dear Judge Droney:

Our firm has provided accounting services to the Funaro family and Visels Drug Store, Inc. for over forty years. I had the honor of working closely with Edmund Funaro, Jr. since he joined the family business. I have known Edmund Funaro, Jr. for over twenty years.

Without hesitation I can attest to the fact that all my dealings with Edmund through the years have convinced me that he is an honest, compassionate and exemplary citizen. My family suffered through our own personal tragedy three years ago. My wife had cancer surgery in 1999 that left her without much of her colon and the prospect that at 39 years old she would have to live her life with a colostomy bag. Edmund from his own personal experience offered not only his valuable pharmaceutical advice but also his personal heartfelt words of encouragement and hope. I have seen him in the pharmacy serve his customers with the same compassion. The Pharmacy is located in the upper Dixwell Avenue section of New Haven. It's an area of the city that no national pharmacy chain would ever consider locating to. Edmund has over the years cultivated mutual respect and life long friendships among his customers. The prospect that Edmund might not be there to serve his customers and friends I believe is a tremendous loss to the neighborhood.

Prayers don't always work, as my children and I know first hand. My wife lost her life to cancer in 1999 in a tragedy that couldn't be prevented. My current prayer is that you will consider Edmund Funaro Jr's qualities as a man and his positive contributions to society in your disposition of this case. Thank you for your consideration.

Respectfully yours,

Stephen Marcarelli, CPA

TO
THE HONORABLE    CHRISTOPHE

F. DRONEY

US DISTRICT JUDGE

FROM  M. SHET

14 BERET ST

HAMDEN CT 06514

203-288-5252

1-13-04                          RE. ED FONARO JR.

YOUR HONOR,

I HAVE KNOWN THE FONARO FAMILY ALL MY LIFE. I HAVE LIVED IN THE NEIGHBORHOOD OF THE DRUG STORE FOR 30 YRS. I MET MY WIFE IN THE STORE. ED SR. AND JAN RAISED THEIR FAMILY INC. ED JR. AND HAVE STAYED ON BASSET ST ALL THESE YEARS. MANY CHANGES HAVE EVOLVED AND NOW I LIVE IN HAMDEN AS DO MANY OTHER FROM THE AREA.

NOW THE DRUG STORE IS THE ONLY PLACE STILL OPERATING FROM DOWN-TOWN NEW HAVEN TO THE BANK AREA OF HAMDEN. THE LOW INCOME FAMILYS DEPEND ON STORE FOR BANKING, FOOD BILL PAYING, MEDICAL HELP, LEGAL ADVICE AS THE FONAROS KNOW ALL THEIR COUSTOMERS WHO TRUST THEM AS FRIENDS THE STORE HAS BEEN ROBED AT GUN POINT BROKEN IN TO, LAST WEEK A MURDER WAS COMMITED OUT SIDE ON DIXWELL. STILL THEY STAY, EMPLOYING MANY KIDS WHO WOULD NEVER GET JOBS OTHER WISE.

(OVER)

ED FUNARO JR HAS BROUGHT
NEW IDEA'S OBER THE YEARS
AND NOW THE STORE IS AN OASIS
IN A DESERT OF POVERTY. WITHOUT
ED JR. IT IS POSSIBLE THE STORE
WOULD CLOSE AS ED SR IS OLDER
AND NOT MANY PEOPLE ARE WILLING
TO WORK INER CITY SHOPS.

ED JR. HAS ALWAYS BEEN HONEST
AND HELPFULL AND I CANT BELLEVE
HE WOULD DO ANYTHING DISHONEST.
I STILL COME TO THE STORE
AS I NOW HAVE A PACEMAKER
AND NEED MUCH MEDICATION.
I WOULDN'T THINK OF GOING
ANY WHERE ELSE.
FOR ED JR. AND HIS FAMILY I
HOPE YOU CAN FIND IT IN YOUR
HEART TO BE LEINANT IN YOUR
JUDGEMENT AS NOT ONLY ED
AND HIS FAMILY WILL SUFFER BUT
A LARGE AREA OF NEW HAVEN THAT
TRUSTED THE FUNARO'S FOR YEARS.
    THANKS FOR
YOUR TIME        *(signature)*