UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | DOCKET NO.: |
| | : | 3:01CR00017 (CFD) |
| EDMUND FUNARO | : | |
| | : | AUGUST 12, 2005 |

## SUPPLEMENTAL BRIEF REGARDING MEMORANDUM IN AID OF SENTENCING

The Defendant, Edmund Funaro, Jr., submits this Supplemental Brief as an aid to the Court in sentencing. The parties appeared in the United States District Court at Hartford, Connecticut, before the Honorable Christopher F. Droney, United States District Judge, for the Defendant's sentencing hearing on August 4, 2005. Throughout oral argument, the Court highlighted several issues for supplemental briefing. This Supplemental Brief is intended to resolve, to the extent possible, the issues presented by the Court.

**I. Which Guidelines are applicable in this case? Are there any ex post facto issues?**

**Part I.**

The Probation Office used the 2003 Guidelines in calculating the Defendant's offense conduct, and the United States Attorney's Office believed that the 2003 Guidelines were more favorable to the Defendant with regard to the offense conduct calculations. However, the Court raised the issue that the 2000 Guidelines appear to be more favorable to the Defendant with regard to an argument for downward departure based on a combination of factors. See U.S.S.G. §5K2.0. Since the underlying conduct in this case, the filling of the allegedly

1

illegitimate prescriptions, took place from March of 1998 through June of 2000, the Court seemed to be concerned with possible ex post facto issues.

In the 2000 Guidelines, the Comment to § 5K2.0 states in pertinent part: "[t]he Commission does not foreclose the possibility of an extraordinary case that, because of a combination of [offender characteristics or other circumstances not ordinarily considered relevant], differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case. However, the Commission believes that such cases will be extremely rare." See Commentary, U.S.S.G. §5K2.0.

In United States v. Rioux, the Second Circuit explained that, "[i]n extraordinary cases, however, the district court may downwardly depart when a number of factors that, when considered individually, would not permit a downward departure, combine to create a situation that "differs significantly from the 'heartland' cases covered by the guidelines." United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996).

In the 2003 and 2004 Guidelines, the Comment to § 5K2.0 explains that if circumstances are present that are not ordinarily relevant to sentencing, such as those listed in U.S.S.G. §5H, to an exceptional degree, or if several circumstances are present to a substantial degree, and taken together make the case an exceptional one, the Court may depart downward. Again, the Comment notes that such cases will be rare. See Commentary, U.S.S.G. §5K2.0.

2

Additionally, the 2000 Guidelines treated 1 gram of Oxycodone as the equivalent of 500 grams of marihuana. See §2D1.1, Drug Equivalency Tables. On the other hand, the 2003 and 2004 Guidelines treat 1 gram of Oxycodone (actual) as the equivalent of 6700 grams of marihuana. See §2D1.1, Drug Equivalency Tables. In other words, the 2000 Guidelines weigh the entire tablet or pill in determining the offense level, whereas the 2003 and 2004 Guidelines simply weigh the active ingredient in the tablet. In light of the changes made in the later Guidelines in the manner in which Oxycodone is weighted, an offense calculation under these Guidelines is more favorable to the Defendant.

While the Defendant concedes that the language in the 2000 Guidelines and the Second Circuit opinion in United States v. Rioux, supra, is more flexible and appears to give the Court more discretion in departing downwards on the basis of a combination of factors, the Defendant believes that he can satisfy the higher standard set forth in the 2003 and 2004 Guidelines which require the several circumstances to be present to a "substantial degree." The defense was unable to locate any Second Circuit cases which explain what the term "substantial degree" means in the context of §5K2.0. However, two cases in the Sixth Circuit, one of which is a district court case, are useful in this regard.

United States v. Holtz, 118 Fed.Appx. 928 (6th Cir. 2004) involved a defendant who was convicted for subscribing a false tax return. Id. at 930. Holtz' Guidelines range was 12 to 18 months. Id. The defendant filed a motion for downward departure based on a combination of business impact and family circumstances. Id. The district court found that, in the aggregate, those factors warranted a downward departure, and the Sixth Circuit affirmed. Id.

3

The appeal was decided before the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005) was handed down.

The district court found that the defendant was the owner of a small business and a general contractor in a condominium development. Id. There was some evidence that a major project that the company was working on would be jeopardized if the defendant was incarcerated. Id. at 930-31. Also, if the company ceased to exist, the Court was concerned that its employees would be jobless and would have a difficult time becoming reemployed in today's economy. Id. at 931. In addition, the defendant's wife had continuing mental health problems, problems which were exacerbated by trial, and needed constant supervision by a family member. Id. at 930. There was further evidence that the defendant's daughter had a heart condition, which rendered her dependent upon her parents and unable to care for her mother. Id.

"[T]he district court granted a departure because it found that sentencing Holz to prison would impact his family and his business and that combination of the family impact and business impact would cause extraordinary harm." Id. at 932-33. The Government contested the district court's factual findings regarding the defendant being uniquely able to provide for his mentally ill wife and the impact his incarceration would have on his business and employees. The Sixth Circuit concluded that, while the evidence was subject to debate, "there was no basis for concluding that the district court committed clear error." Id. at 934, 938. In concluding that a downward departure was warranted, the Sixth Circuit explained that while the family circumstances and business impact arguments would not be sufficient to

4

justify a departure on their own, when considered together, a departure was appropriate. Id. at 940. The Court concluded that family circumstances and business impact are each "present to a substantial degree." Id. at 941.

United States v. Kuhn, 351 F.Supp.2d 696 (E.D. Mich. 2005) involved a defendant who was convicted of violations of the Clean Water Act. Id. at 697. Kuhn's Guidelines range was 21 to 27 months. Id. The Court departed downward four levels and sentenced the defendant to six months in custody and six months in supervised release. Id. The Government appealed. Id. The procedural history in the Kuhn case is complicated. The defendant was initially sentenced prior to the Supreme Court decisions in Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005), but when the case was remanded back to the district court for re-sentencing, the court sentenced the defendant under the "now advisory" Guidelines. Id. at 699.

At re-sentencing, the defendant argued that his employment and his charitable deeds were so substantial, when considered together, to warrant a downward departure. Id. at 703. The defendant argued that he was a dedicated employee of the Bay City Waste Water Treatment Plant from 1971 to 2000 and that he was also involved in a numerous charitable acts and has a history of enriching the community. Id. The Government argued, according to §5K2.0 of the Guidelines, that the combination of circumstances must be present to a substantial degree to warrant a downward departure and departures should only occur in extremely rare cases. Id. The district court noted that, under Sixth Circuit precedent, "it may depart downward in this case if it determines that the defendant's charitable contributions and

5

involvement in the community, including his continuous employment history in the public sector, are sufficiently unusual and 'outside the heartland of cases' to warrant such a departure and involved a significant contribution of the defendant's time, personal skill, and personal involvement." Id. at 705.

> The Court believes that based on the facts of the case, including this Court's findings at the first sentencing regarding the defendant's 'community involvement and exemplary personal record of achievements in the community,' See Kuhn, 345 F.3d at 435, a downward departure from the now-advisory Sentencing Guidelines is warranted. ***The defendant's involvement in his community extends well beyond mere financial contributions***. Rather his community involvement includes thirty years as a Eucharistic and homebound minister, lector and parish council member at Holy Trinity church; service on the board of directors of the Bay Arts Council; president of Bay Fresh Start program, which is a local alternative to probation; volunteer worker for Habitat for Humanity and the Paint & Pride program; sponsor for the Delta College public television auction for over ten years; member of the Bay City All Saints School Board; volunteer athletic coach at the local YMCA; and volunteer at Bay City Creative Caring preparing meals for the day care center. He also has assisted residents of the Arete Center, a community corrections facility, obtain employment.
>
> In addition, the Court has received a large volume of letters submitted on the defendant's behalf from individuals, including community and civic leaders, that are compelling and urge leniency. Moreover, as demonstrated above, it appears that the defendant was personally involved in community service and did not merely give financial contributions to the organizations as in Tocco. Therefore, taking all of the relevant factors into account per Section 5K2.0, the defendant's motion for downward departure based on community service is justified, takes this offender outside of the heartland of offenders contemplated by the Guidelines, and favors a departure.

Id. at 705 (emphasis added).

The Court noted that, while the defendant's employment history was not as remarkable as other cases, when combined with his community service, there was enough present to justify a departure. Id. at 706. Furthermore,

> [t]he Court is mindful of the importance of the environmental statutes and the need to enforce the strictures that ensure the safety of the environment. A sentence below the recommended range will achieve that goal. The stigma of a criminal record, exposure to a sentence of confinement (as the defendant has already served in this case), and monetary fines also promote respect for the law and provide just punishment in light of the seriousness of the offense, and they serve as a deterrence to others.

Id. at 708. As a result of the Court's findings, it concluded that the split sentence it initially imposed was appropriate under the totality of circumstances.

The Defendant submits, in light of these Sixth Circuit and Eastern District of Michigan opinions, that his personal circumstances are present to a substantial degree, allowing the Court to depart downward based on U.S.S.G. §5K2.0. In any event, in this new arena where the Guidelines are only advisory, strict adherence to the language of the Guidelines, including the limiting language of §5K2.0, is not necessary. Booker, supra, at 765-66 and United States v. Crosby, 397 F.3d 103, 114 (2d 2005) explain that sentences will now be reviewed under the standard of reasonableness. The Second Circuit in Crosby advised that:

> [A] sentencing judge would commit procedural error by *mandatorily* applying the applicable Guidelines range that was based solely on facts found by a jury or admitted by a defendant. The Court in its Remedy Opinion made clear that, even though the resulting sentence would not violate the Sixth Amendment, the judge would have erred by mandatorily acting under the now-excised requirement of subsection 3553(b)(1). A sentence explicitly based upon a non-existent statutory provision, even if "reasonable" in length,

7

> constitutes error (although possibly "harmless error" or not "plain error"), because of the unlawful method by which it was selected.

Id. at 114-15. With this warning in mind, it is the Defendant's position that this Court is not restricted by the rigid language of §5K2.0 in the Guidelines. Should the court wish to depart based on the Defendant's family circumstances, charitable works and the like, it may also do so under at 18 U.S.C. § 3553(a) analysis.

**Part II.**

Between the 2000 and 2003/2004 Guidelines, the 2003/2004 Guidelines appear more favorable to the Defendant overall. The case law explains that the most current version of the Guidelines is to be applied unless there is an ex post facto problem. This means that the 2004 Guidelines should be used, as long as they do not increase the punishment that the Defendant would have received under the Guidelines that were applicable during the period in which the offense occurred, in this case, the 2000 Guidelines.[1]

A court is to apply the version of the Guidelines in effect at the time of sentencing unless there is an ex post facto problem. See 18 U.S.C. §3553(a)(4)(b); See generally United States v. Adeniyi, 912 F.2d 615, 618 (2d Cir. 1990). If the application of a Guideline amendment that takes effect after the defendant commits his offense increases the punishment for that offense, the Ex Post Facto Clause is violated. See United States v. Rivers, 50 F.3d 1126, 1129 (2d Cir. 1995). "A version of the sentencing guidelines is to be applied in its entirety," and the "sentencing court has no authority to pick and choose, taking one provision

from an earlier version of the guidelines and another from a later version." United States v. Keller, 58 F.3d 884, 890 (2d Cir. 1995).

> In assessing whether a sentencing provision violates the ex post facto clause, a court must compare the two statutory schemes as a whole, rather than each provision, to determine 'if the new [scheme] may be fairly characterized as more onerous.' Dobbert v. Florida, 432 U.S. 282, 294 (1977) (evaluating new procedures for imposition of the death penalty); see also Miller v. Florida, 482 U.S. 423, 431 (1987). In the context of the Sentencing Guidelines, the "whole scheme" to be evaluated includes all of the provisions applicable to a defendant's conduct, not just one amendment or enhancement. See United States v. Stephenson, 921 F.2d 438, 441 (2d Cir. 1990) ('Applying various provisions taken from different versions of the Guidelines would upset the coherency and balance the Commission achieved in promulgating the Guidelines.').

United States v. Ruggiero, 100 F.3d 284, 293 (2d Cir. 1996).

Since the 2003/2004 Guidelines overall appear to be more favorable to the Defendant, there is no ex post facto issue in this case.

## II. Is there any post-Booker authority for treating pharmacists convicted under 21 U.S.C. §841 differently from the stereotypical drug dealer or the physician issuing the improper prescriptions?

The Defendant was unable to locate any authority, other than United States v. Lara, cited in the Defendant's Memorandum in Aid of Sentencing, standing for the proposition that

---

[1] The provisions in question, U.S.S.G. §§2D1.1 and 5K2.0, appear to be identical in the 2003 and 2004 Guidelines, as they pertain to the Defendant in this case.

9

pharmacists convicted under 21 U.S.C. §841 should be treated differently from the stereotypical drug dealer.[2]

With regard to the distinction between a doctor and a pharmacist, however, the Government, during the initial sentencing hearing in this case, conceded that the prescribing doctor who issued the illegitimate prescriptions for controlled substances is more culpable than the pharmacist who fills those same prescriptions. The Defendant located some authority supporting the Government's concession. However, the Defendant notes that the decisions in this area were handed down prior to the institution of the Federal Sentencing Guidelines in 1987. Though the cases are pre-Guidelines cases, and they therefore obviously involve statutory interpretation rather than Guideline interpretation, the Defendant submits that there is some merit to the application of these cases in this new era of advisory Guidelines.

United States v. Vamos, 797 F.2d 1146 (2d Cir. 1986), involved the conviction of a nurse for aiding and abetting the distribution of controlled substances outside the scope of the professional medical practice, furnishing false information in records and conspiracy. Id. at 1148. Dr. Sugar, Vamos' superior, sold drugs to patients far in excess of the medically acceptable dosages, and Vamos was responsible for dispensing the drugs. Id. In addition,

---

[2] The Lara opinion explains that "Congress authorized severe sentences for those dealing in large quantities of narcotics in order to provide justified punishments for 'stereotypical drug dealer[s],' those described in congressional debates as the ones who 'live in the fast lane…drive big cars—usually several—like BMWs and Mercedeses…[and] like …[b]ig gold chains and big gold [and]diamond rings.'" United States v. Lara, 47 F.3d 60, 63 (2d Cir.1995).

after the New York Bureau of Controlled Substances conducted an audit of Dr. Sugar's office, and his records were found deficient, Vamos directed the staff to create false records in order to account for the massive drug distribution. Id. The jury convicted Vamos on 19 counts, and the court sentenced her to one year of incarceration, six months of which was suspended. Id. at 1149-1150. In discussing what standard Vamos should be held to as a nurse, the Second Circuit stated:

> ***[w]hile those who assist practitioners in distributing controlled drugs clearly cannot be held to the standard of a reasonable practitioner***, they are not free to unreasonably rely on the judgment of their employers…The jury in this case was entitled to weigh the fact that a trained nurse such as Vamos is expected to have a ***higher degree of awareness than the average layman, yet a lower degree of knowledge than a licensed physician.***

Id. at 1153 (emphasis added). In the present case, Mr. Funaro, as a licensed pharmacist, and like Vamos, should have "a higher degree of awareness than the average layman, yet a lower degree of knowledge than a licensed physician." This lower degree of knowledge, and therefore culpability, should correspond to a lesser punishment for Mr. Funaro in comparison to what Dr. Massie would have received had he not died before trial.

In United States v. Hayes, the Fifth Circuit affirmed the conviction of the Defendant, a registered pharmacist, under 21 U.S.C. §841(a)(1) and 21 C.F.R. 1306.04(a). United States v. Hayes, 595 F.2d 258, 262 (5th Cir. 1979). In discussing the corresponding duty between a doctor and a pharmacist in handling controlled substances, the court stated that:

> Verification by the issuing practitioner on request of the pharmacist is evidence that the pharmacist lacks knowledge that the prescription was issued outside the scope of professional practice. But it is not an insurance

> policy against a fact finder's concluding that the pharmacist had the requisite knowledge despite a purported but false verification. ***The pharmacist is not required to have a "corresponding responsibility" to practice medicine.*** What is required of him is the responsibility not to fill an order that purports to be a prescription but is not a prescription within the meaning of the statute because he knows that the issuing practitioner issued it outside the scope of medical practice.
>
> This court said in <u>Collier</u> that "Congress did not intend for doctors to become drug 'pushers.'" 478 F.2d at 272. ***Nor do we think that Congress intended to allow pharmacists to aid doctors in becoming pushers.*** When a pharmacist fills a prescription that he knows is not a prescription within the meaning of the regulations he is subject to the penalties of § 841.

<u>Id.</u> (emphasis added). The <u>Hayes</u> court clearly distinguished between the roles of pharmacists and doctors and even went so far as to say that pharmacists should not *aid* doctors in becoming pushers, by filling prescriptions. Such a statement is premised on the doctor being the principal actor and the pharmacist being a secondary actor. This distinction further supports the argument that Mr. Funaro should not be punished as severely as Dr. Massie would have been if he were still alive.

### III. What does the post-Booker authority say about considering the sentences of co-defendants versus similarly situated defendants nationwide in avoiding unwarranted sentencing disparities?

As the Court noted, <u>United States v. Toohey</u>, 132 Fed.Appx. 883 (2d Cir. 2005) governs how the district courts in Second Circuit are to treat the issue of avoiding sentencing disparities between similar defendants. In <u>Toohey</u>, the district court departed downward and gave the defendant a lenient sentence solely because it believed an unrelated defendant (not a co-defendant) was more culpable than Toohey, and that defendant had already received a

12

lenient sentence. Id. at 885. In Toohey, therefore, the district court did not compare Toohey to other similarly situated defendants, but rather, it decided to impose a more lenient sentence because Toohey's conduct was less egregious than that of another defendant in a completely unrelated matter. Id. at 886. Furthermore, the district court used this reasoning as its *sole basis* for a downward departure and did not articulate with specificity its findings. Id. The Second Circuit explained that the need for specificity in making findings to depart downward is important to ensure that the sentence eliminated rather than created an *unwarranted* disparity in sentencing. Id. "Congress' 'objective was to eliminate unwarranted disparities nationwide.'" Id. "Thus, a sentencing court does not reasonably satisfy its statutory obligation under §3553(a)(6) when it only compares discrete cases or defendants. Rather, to identify a reasonable sentence, §3553(a)(6) expects a court to consider whether a defendant is favored or disfavored by a particular sentence 'compared to *all* those similarly situated defendants.'" Id. at 886-87.

The Toohey case cited to United States v. Joyner, which explained that "similarly situated defendants" were "defendants with similar records and who have been found guilty of similar conduct." United States v. Joyner, 924 F.2d 454, 460 (2d Cir. 1991). The opinion further explained that "[a] 'disparity' usually results because offenders in similar circumstances are given significantly different sentences." Id. at 459. The opinion noted, however, that the courts are not directed to eliminate all disparities in sentencing, but rather they must avoid *unwarranted* sentencing disparities. Id. at 460. In deciding an appropriate sentence for a defendant, courts are permitted to depart from the Guidelines if there are

circumstances present to such a degree as to have been beyond the Sentencing Commission's consideration. Id. However, "[a] downward departure made *solely* to increase the difference between a defendant's sentence and that of his co-defendants simply reflects a sentencing judge's assessment that the Commission has set either too low a sentencing range for the combination of facts that determines the co-defendant's applicable guideline range or too high a sentencing range for the guideline applicable to the defendant." Id. at 461.

> *Though disparity among co-defendants as such is not a permissible basis for departure, a sentencing judge is entitled to achieve a result that coincidentally increases or decreases the gap between sentencing ranges applicable to co-defendants if the judge finds in good faith that the statutory criterion for a departure has been met.*

Id. (emphasis added). "*[M]ost downward departures will likely be occasioned by unusual circumstances concerning the defendant, rather than the offense, and it will rarely be the case that the guideline table offers much in the way of a helpful analogy for assessing how much a departure to make for such personal circumstances.*" Id. at 462 (emphasis added).

The Defendant has complied with the requirements of Joyner and Toohey in trying to locate cases concerning "similarly situated defendants." The defendant has not found any cases, post-Booker, that deal with sentencing issues for "similarly situated" pharmacists who violated 21 U.S.C. §841, in this circuit, or in another circuit. As Hayes, supra, explained, a pharmacist is not required to have a corresponding duty to practice medicine, and therefore Mr. Funaro should not be compared to doctors, or any other defendants convicted of 21 U.S.C. §841 charges, except similarly situated pharmacists. In fact, if the underlying conduct is the key, see United States v. Joyner, supra, at 460, it is appropriate to review the sentences

14

received by Mr. Funaro's pharmacist Co-Defendants in this case, in addition to looking at defendants nationwide, in order to avoid unwarranted sentencing disparities.

In the present case, the Defendant submits that there are many grounds available through which the Court can depart downward and grant Mr. Funaro a lenient sentence. Unlike Toohey and Joyner, the need to avoid an unwarranted sentencing disparity between Mr. Funaro and his co-defendant pharmacists would not be the *sole basis* for departure. Additionally, the Defendant submits that it is nearly impossible to find another Defendant similar to Mr. Funaro in order to compare sentences and ensure that unwarranted disparities are avoided. Joyner explains that "similarly situated defendants" are defendants with the same record and the same offense conduct, but it later explains that departures will be occasioned by unusual circumstances personal to a particular defendant, not having anything to do with his offense or his record. Though probably many other pharmacists nationwide have been convicted of violating 21 U.S.C. §841, it is unlikely that these pharmacists also have the same compelling arguments for downward departure that Mr. Funaro has, including his exceptional family ties and personal circumstances, his charitable acts, good deeds and status as a community employer, his health concerns and the fact that the Guidelines overstate Mr. Funaro's offense conduct. Because of these additional factors, the defendant submits that any disparity that is created between his sentence and that of similarly situated defendants is *warranted*. Additionally, as explained above, Booker, supra, at 765-66 and Crosby, supra, at 114 state that sentences will now be reviewed under the standard of reasonableness. The Defendant believes that if the Court articulated its reasoning for departing downward on the

basis of the factors argued by the Defendant, or if the Court used these factors in articulating an appropriate non-Guideline sentence, an appellate court would consider its findings reasonable.

                                                Respectfully Submitted,
                                                Defendant Edmund Funaro, Jr.

                                                By: _____
                                                Alan J. Sobol
                                                Fed. Bar No. CT00955
                                                **O'CONNELL, FLAHERTY & ATTMORE, LLC**
                                                280 Trumbull Street, 23rd Floor
                                                Hartford, CT 06103-3598
                                                Telephone: (860) 548-1300
                                                Facsimile: (860) 548-0023

## CERTIFICATE OF SERVICE

      This is to certify that the foregoing Memorandum in Aid of Sentencing was mailed to the following parties and counsel of record this 12th day of August, 2005 as follows:

Jonathan Biran, Esq.
Assistant United States Attorney
Federal Building and U.S. Courthouse
United States Attorney's Office
157 Church Street, 23rd Floor
New Haven, CT 06501

Jacqueline Carroll, USPO
United States Probation Office
Federal Building & U.S. Courthouse
157 Church Street, 22nd Floor
New Haven, CT 06510

_____
Alan J. Sobol