UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NUMBER: 3:01CR17 (CFD) |
| | : | |
| v. | : | |
| | : | August 15, 2005 |
| EDMUND FUNARO, JR. | : | |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN AID OF SENTENCING

### Introduction

On August 4, 2005, the Court held a sentencing hearing in this case. In the course of that hearing, the Court invited supplemental briefing concerning: (1) whether the advisory Sentencing Guidelines range applicable to defendant Edmund Funaro, Jr. ("Funaro") should be calculated using the Guidelines manual in effect at the time of the offense or the current manual; and (2) whether a pharmacist who knowingly fills an illegitimate prescription is less culpable with respect to that prescription than the doctor who wrote it.[1]

**A.  Choice of Guidelines Manual**

The Court inquired as to whether application of Funaro's Guidelines range under the Guidelines manual currently in effect (November 1, 2004) would raise an ex post facto issue, given that U.S.S.G. § 5K2.0 was amended following the conclusion of Funaro's offense to make

---

[1] The Court also asked whether the parties were aware of other cases involving sentences imposed on health care practitioners for similar conduct so that the Court could consider whether or not a sentence within the 78-97 month Guidelines range would constitute an unwarranted sentencing disparity. The Government is in the process of surveying the case law for instructive cases. With the Court's permission, the Government will file additional briefing several days prior to the August 26 sentencing if such cases are discovered.

departures based on multiple circumstances less available than under the manual that was in effect at the time of the offense (November 1, 1998).[2]

As a general rule, the Court must use the Sentencing Guidelines Manual in effect at the date of sentencing. See 18 U.S.C. § 3553(a)(4)(A)(ii); see also U.S.S.G. § 1B1.11. However, at least prior to United States v. Booker, ___ U.S. ___, 125 S. Ct. 738 (2005),[3] courts had held that where application of the Guidelines in effect at sentencing would result in a more severe sentence than the version in effect at the time of the commission of the offense, the application of the newer Guidelines would violate the Ex Post Facto Clause of the Constitution. See United States v. Broderson, 67 F.3d 452, 456 (2d Cir. 1995). In such cases, "the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). This Court therefore should determine Funaro's sentence using both the 1998 and 2004 manuals. If the calculation under the current manual results in a higher Guidelines range than does the 1998 manual, then the Court arguably should apply the 1998 manual to avoid any potential ex post facto problem.

Under the 2004 manual, the quantity of illegally dispensed controlled substances is equivalent to approximately 115.53 kilograms of marijuana, resulting in a base offense level of 26. With a two-level upward adjustment for abuse of a position of trust/use of a special skill under U.S.S.G. § 3B1.3, the total offense level becomes 28, leading to a Guidelines range of 78-

---

[2]    The Attorney for the Government misspoke at the August 4 hearing in stating that the manual in effect at the time of the offense was the November 1, 2000 manual. The conduct at issue here concluded in June 2000.

[3]    At least one court has stated that "[i]t is doubtful that the ex post facto clause plays any role after Booker." United States v. Roche, 2005 WL 1618816, at *3 (7th Cir. Jul. 11, 2005).

97 months. The 1998 manual calculated the quantity of oxycodone (the active ingredient in Percocet and the other Schedule II controlled substances at issue in this case) differently. The entire weight of each tablet – not just the oxycodone – was included in determining the quantity of drugs for purposes of U.S.S.G. § 2D1.1. By the Government's calculation, under the 1998 version of that Guideline, the same quantity of controlled substances that were illegally dispensed by Funaro would have been equivalent to 534.93 kilograms of marijuana, resulting in a base offense level of 28 and a total offense level of 30. Thus, under the 1998 manual Funaro's Guidelines range is 97-121 months.

Up to this point in the analysis, it would seem that the 2004 is the more advantageous manual for Funaro. That, however, is not the end of the inquiry. As the Court noted, the current version of U.S.S.G. § 5K2.0 requires that the Court find a minimum of two or more offender characteristics or other circumstances, which "taken together, make the case an exceptional one," and that each of these offender characteristics or circumstances be present to a "substantial degree" and be identified in the Guidelines as a permissible ground for departure. U.S.S.G. § 5K2.0(c). In comparison, the 1998 manual is silent on the requirements for departures based on multiple circumstances.

Thus, it would appear that the Court should determine whether it believes Funaro is entitled to a multiple circumstances departure under the 1998 manual but not under the 2004 manual. If so, the Court should determine how far it would depart from the 97-121 month range applicable under the 1998 manual. If the Court concludes that a departure to a sentencing range lower than 78-97 months is appropriate, then it arguably should use the 1998 manual to avoid any potential ex post facto problem. On the other hand, if the Court concludes that Funaro either

is or is not entitled to a multiple circumstances departure under both manuals, then the Court should apply the 2004 manual. For the reasons stated in the Government's response to Funaro's sentencing memorandum, the Court should conclude that a multiple circumstances departure is not appropriate under either Guidelines manual, and should sentence Funaro at the low end of the 78-97 month range called for by the 2004 manual.

**B.    Relative Culpability of Pharmacist and Doctor**

It is axiomatic that things which are equal to the same thing are also equal to each other. Therefore, when evaluating the relative culpability under 21 U.S.C. § 841 of pharmacists and physicians, an analysis of their roles in comparison to the more typical "street dealer" is instructive. In United States v. Moore, 423 U.S. 122 (1975), the Supreme Court rejected the argument that physicians could not be prosecuted under section 841 for dispensing or distributing controlled substances. The Court held that, when interpreting section 841, the relevant inquiry turns "on whether the 'transaction' falls within or without legitimate channels." Id. at 135. Under Moore's bright-line rule, Funaro, who was duly convicted by a jury of illegally dispensing controlled substances, must fall on the "illegitimate channels" side of the line. Accordingly, Moore provides no support for the argument that, due to their differing roles in the illegal distribution of controlled substances, pharmacists are entitled to less punishment than their physician counterparts.

Several courts of appeals have interpreted the reasoning in Moore to preclude giving any special treatment to pharmacists who illegally dispense controlled substances. The Fifth Circuit, affirming the conviction of a pharmacist under section 841, stated: "What is required by [the pharmacist] is the responsibility not to fill an order that purports to be a prescription but is not a

4

prescription within the meaning of the statute because he knows that the issuing practitioner issued it outside the scope of medical practice." United States v. Henry, 727 F.2d 1373 (5th Cir. 1984) (citation omitted).

Additionally, in United States v. Limberopoulos, 26 F.3d 245 (1st Cir. 1994), the First Circuit even more explicitly described the pharmacist's role and relative culpability under section 841. In that case, the Court vacated the district court's significant downward departure from a Guidelines sentence of 235-293 months to 36 months for a pharmacist convicted of violating section 841. The district court had reasoned that the departure was necessary because there was another, more lenient regulatory statute extant, 21 U.S.C. § 843, and that the trafficking charge significantly overstated the seriousness of the charged conduct. See Id. at 248. However, the Court of Appeals vacated, stating:

> [T]he unlawful-drug-trafficking statute, 21 U.S.C. § 841, does not exempt pharmacists who sell narcotic drugs without prescriptions, nor does it suggest that their conduct is somehow less seriously wrong than the conduct of non-pharmacist drug dealers. On the contrary, the statute applies to the two groups' conduct in the same way.

Id. at 249 (emphasis added).

Likewise, the Eleventh Circuit has held pharmacists accountable for illegally distributing narcotics. The Court stated: "[T]o fill phony prescriptions for a person who had no medical need for the drugs. . . . [T]his conduct falls expressly within the heartland of a drug trafficking offense as defined by § 841(a)(1)." United States v. Steele, 178 F.3d 1230, 1238-39 (11th Cir. 1999). In sum, there is no authority or support in the case law for treating pharmacists or physicians differently from each other or differently from a street dealer. Accordingly, courts must look to the "nature of the drug transaction, rather than [to] the status of the defendant."

Moore, 423 U.S. at 134. In this case, Funaro has been convicted by a jury of dispensing controlled substances outside of legitimate channels, see id. at 135, and therefore "section 814 applies in full flower and treats the dispenser like a pusher." Limberopoulos, 26 F.3d at 250 (emphasis added).

Moreover, any argument that a pharmacist is more deserving of a downward departure fails in light of the corresponding responsibility regulation that is at the core of this case. Pharmacists have a "corresponding responsibility" along with physicians in the dispensing of controlled substances. The regulation states that "the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided . . . ." 21 C.F.R. § 1306.04(a) (emphasis added). Finally, Funaro's argument that pharmacists are less liable than doctors runs somewhat counter to reason when one considers that a doctor only gives a drug user a piece of paper, whereas it is the pharmacist who actually delivers the controlled substance to the user. Thus, under both the current case law and federal regulations, pharmacists who knowingly fill illegitimate prescriptions are and should be no less culpable than the doctors who write them.

## Conclusion

As the hearing in this case made clear, a sentence of incarceration for Edmund Funaro, Jr., will be a difficult and sad end to this case for the Funaro family and for a considerable number of other people who know and like Mr. Funaro. However, the Court must remember the conduct that brought Funaro before the Court and the harm that Funaro did to the community surrounding Visels Pharmacy, the larger New Haven community, and the surrounding region. In particular, the remarks of State Representative Dyson concerning the several schools that are in

close proximity to Visels were telling. It undoubtedly was good of Funaro to speak about the role of a pharmacist at a career day at one of those schools, but unfortunately Funaro's actions in letting dangerous drugs hit the street near those same schools speak much louder than any words of career advice he gave to the students. While some in the community apparently would like to let bygones be bygones rather than risk the (in the Government's view, overblown) possibility that Visels will close its doors should Funaro be incarcerated, the Court's sentence in this case should clearly send a message to Funaro and other pharmacists and health care professionals tempted to illegally dispense controlled substances. In the Government's view, a sentence at the low end of the confinement range of 78-97 months is appropriate in this case.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


/s/
By:   ROBERT M. SPECTOR
      Assistant United States Attorney
      Federal Bar No. ct18082

For:  JONATHAN BIRAN
      Assistant United States Attorney
      Federal Bar No. ct21922
      United States Attorney's Office
      157 Church Street, 23rd Floor
      New Haven, CT 06510
      (202) 821-3700
      Email: Jonathan.Biran@usdoj.gov

**CERTIFICATE OF SERVICE**

      This is to certify that on August 15, 2005, a copy of the foregoing was served on the following persons:

| | |
|---|---|
| Alan J. Sobol, Esq. (by fax and U.S. mail) | Jacqueline Carroll (by hand delivery) |
| O'Connell, Flaherty & Attmore, L.L.C. | U.S. Probation Officer |
| 280 Trumbull Street | U.S. Probation Office |
| Hartford, CT 06103-3598 | 157 Church Street |
| | New Haven, CT 06510 |

                /s/
By:   ROBERT M. SPECTOR
       ASSISTANT U.S. ATTORNEY

For:  JONATHAN BIRAN
       ASSISTANT U.S. ATTORNEY